Frank W. Volk, Chief Judge
United States Bankruptcy Court
Southern District of West Virginia

# UNITED STATES BANKRUPTCY COURT
## SOUTHERN DISTRICT OF WEST VIRGINIA
## AT CHARLESTON

| | |
|---|---|
| IN RE:<br><br>MOUNTAIN COUNTRY PARTNERS, LLC,<br><br>                Debtor. | CASE NO. 2:12-bk-20094<br><br>CHAPTER 11<br><br><br>JUDGE FRANK W. VOLK |
| ROBERT L. JOHNS,<br>LIQUIDATING TRUSTEE<br>OF MOUNTAIN COUNTRY<br>PARTNERS, LLC,<br><br>                Plaintiff,<br>v.<br><br>SPRAGUE & SPRAGUE,<br>REZNICSEK FRASER, HASTINGS,<br>WHITE & SHAFFER, P.A., and<br>UNITED STATES SECURITIES AND<br>EXCHANGE COMMISSION,<br><br>                Defendants. | ADVERSARY PROCEEDING NO.<br>2:14-ap-2080 |

## MEMORANDUM OPINION AND ORDER

Pending are the cross-motions for summary judgment by the Plaintiff Robert L. Johns, Liquidating Trustee of Mountain Country Partners, LLC ("Trustee"), and the Defendant United States Securities and Exchange Commission (the "SEC"), both filed July 18, 2016 [Dckts.

97 & 102]. Also, pending are the cross-motions for summary judgment by the Trustee and the Defendant Sprague & Sprague ("Sprague"), both filed July 18, 2016 [Dckts. 100 & 107]. [1]

On August 17, 2016, the Trustee responded to the SEC's motion and to Sprague's motion [Dckt. 114]. That same day the SEC and Defendant Ronald F. LeGrand ("LeGrand") responded to the Trustee's motion [Dckts. 111 & 113]. On September 9, 2016, the Trustee, the SEC, and Sprague all replied [Dckts. 118-20 & 122]. The cross-motions for summary judgment are ready for adjudication.

This is a core proceeding pursuant to 28 U.S.C. § 157(b)(2)(E) and (H). The Court has jurisdiction pursuant to 28 U.S.C. § 157 and 28 U.S.C. § 1334.

**I.**

In the fall of 2006, LeGrand established Mountain Country Partners, LLC, ("MCP") with the purpose of bidding on Buffalo Properties, LLC, a bankrupt oil and gas company that was being auctioned. (Dckt. 101 at 4). MCP successfully bid $7 million to purchase Buffalo Properties. (*Id*. at 5). MCP made a deposit of $725,000 and raised the rest of the money through investors that were solicited at LeGrand's real estate investment seminars and through emails. (*Id*.). LeGrand's associate, Frederick E, Wheat, Jr. ("Wheat"), also helped to solicit investors. (*Id*.). Through the solicitations, LeGrand raised $9.5 million for MCP from 54 investors. Each investor was given a promissory note that listed various investment options, including treatment of the outlay as either debt or equity. (*Id*.). The promissory note included the provision that the investors

---

[1] It appears that the defunct entities Heritage Financial Group, Inc., KPAM, LLC, and Northside Funding, Inc., are proceeding *pro se*. It further appears that the Trustee and these entities, along with Ronald F. LeGrand, Katisha Hill, and NORS, LLC., have tendered a proposed dismissal order. It is, accordingly, **ORDERED** that Heritage Financial Group, Inc., KPAM, LLC, Northside Funding, Inc., Ronald F. LeGrand, Katisha Hill, and NORS, LLC, be, and hereby are, **DISMISSED** from this proceeding.

were "to receive 150% times [their] investments back prior to Nov. 21st, 2007." (*Id*. at 10). There is no evidence or allegations that MCP engaged in solicitation. (*Id*.).

In October 2007, the SEC began investigating MCP, LeGrand, and Wheat. (*Id*.). The investigation involved the possible sale of unregistered securities, which was related to the solicitation, marketing, and sales of the MCP promissory notes. (*Id*.). On October 31, 2007, Sprague agreed to represent LeGrand and MCP in the SEC investigation. (*Id*.). During 2007 and 2008, MCP paid $186,282.25 to Sprague for its representation of MCP and LeGrand in the SEC investigation. (*Id*. at 7). Within four years of MCP's Chapter 11 petition date, $101,282 was paid to Sprague. (*Id*.).

On January 27, 2009, Sprague terminated its representation of LeGrand and MCP for failure to pay legal fees. (*Id*.). Subsequently, Sprague filed a lawsuit against LeGrand, individually, and MCP for unpaid legal fees. (*Id*.). The lawsuit was settled for an additional $100,000 that was paid by MCP. (*Id*. at 8).

On July 12, 2011, the SEC instituted an action against LeGrand and Wheat alleging they had violated securities laws through the sale of MCP's promissory notes, which were unregistered securities. (Dckt. 98 at 5). That same day, the Consent of Defendant Ronald F. LeGrand ("Consent") was filed, which contained his acquiescence for the entry of a final judgment. (*Id.*). The Consent included a clause that stated "[LeGrand] agrees that he shall not seek or accept, directly or indirectly, reimbursement or indemnification from any source . . . with regard to any civil penalty amounts that [LeGrand] pays pursuant to the Final Judgment." (Dckt 101 at 8). This clause was added after LeGrand attempted to negotiate a revision that would permit him to be reimbursed by MCP. (Dckt. 98 at 7). On August 2, 2011, the United States District Court for the Southern District of West Virginia entered a Final Judgment against LeGrand that required him to pay a $150,000 civil penalty to the SEC within 60 days. (Dckt. 101 at 9). MCP did not receive any penalties. (Dckt 122 at 3).

Around August 22, 2011, LeGrand sold 7.5% of his MCP interest shares to MCP for $150,000. (Dckt. 98 at 5). LeGrand directed MCP to transfer the $150,000 to NORS, LLC ("NORS"), another of LeGrand's companies. (*Id.*). NORS proceeded to send the SEC a cashier's check in the amount of $150,000, which included a letter from LeGrand's attorney informing the SEC that the check was payment for LeGrand's civil penalty. (Dckt 103 at 7).

On February 17, 2012, an involuntary Chapter 11 petition was filed against MCP by its creditors [BK Dckt 1]. On June 20, 2014, the Official Committee of Unsecured Creditors of MCP ("Committee") instituted this adversary proceeding that attempts to recover money from allegedly fraudulent transfers [Dckt. 1].

### A.  Cross-Motions for Summary Judgment by Trustee and the SEC

On July 18, 2016, the Trustee moved for summary judgment against the SEC [Dckt. 97]. The accompanying memorandum offers three arguments in support of the Trustee's avoidance of the initial transfer of the $150,000 from MCP to NORS. (Dckt. 98 at 9).

First, the Trustee asserts that the initial transfer from MCP to NORS can be avoided under 11 U.S.C. § 548(a), which allows a transfer to be avoided if (1) the transfer was made within two years before the date of a bankruptcy petition and (2) there was actual intent to hinder, delay, or defraud the creditor. Here, the Trustee satisfies the first element.  The transfer was made in August of 2011 and the involuntary petition was filed in February of 2012. The Trustee also asserts that the transfer was made with intent to hinder, delay, and defraud MCP's creditors. To support his assertion, the Trustee alleges that LeGrand knew that the interest he sold back to MCP was worthless, and that taking money from MCP would defraud its creditors. (*Id*. at 9-10).

Second, the Trustee contends that the initial transfer can be avoided under 11 U.S.C. § 548(b), which allows a transfer to be avoided if (1) the transfer occurred within two years before

4

the date of a bankruptcy petition; (2) the debtor received less than a reasonably equivalent value in exchange for the transfer; and (3) the debtor was insolvent at the time of the transfer or become insolvent as a result of the transfer. As noted, the first element is satisfied. Respecting the balance of the statutory requirements, (1) the Trustee asserts that MCP received less than a reasonably equivalent value in exchange for the transfer, inasmuch as the interest shares were worthless, and (2) MCP was insolvent at the time the transfer was made inasmuch as it could not pay its $2.8 million debt to its investors. (*Id*. at 10-11).

Third, the Trustee argues that the initial transfer can be avoided under 11 U.S.C. § 544(b)(1), which allows a trustee to avoid a transfer that is voidable under applicable law by a creditor who holds an unsecured claim. Here, the Trustee asserts that MCP's investors have an unsecured claim; and, as such, the Trustee can act for the benefit of the investors. Again, the Trustee argues the transfer "constitutes an intentional act to hinder, delay, and defraud" inasmuch as MCP was insolvent and did not receive a reasonably equivalent value in exchange for the $150,000. (*Id*. at 11-12).

Inasmuch as the Trustee believes he can avoid the initial transfer, he argues that he can also avoid the subsequent transfer to the SEC under 11 U.S.C. § 550(a). Section 550(a) permits a transfer that is avoided under § 544 or § 548 "from the initial transferee . . . or any immediate or mediate transferee of such initial transfer" to be avoided. (*Id*. at 12).

LeGrand, however, responds that he did not act with the intent to hinder, delay, or defraud MCP's creditors. LeGrand asserts that at the time of the transfer, he believed MCP was solvent. This belief was based on an offer to purchase MCP for $2,000,000, a valuation report of MCP for almost $50,000,000, and a deal that was being negotiated to bring in an additional $8,200,000. Further, LeGrand asserts that he believed all debts were paid except for some equity members who had converted to notes. (Dckt. 113 at 6).

5

The SEC has also moved for summary judgment [Dckt. 102]. It contends that even if the initial transfer is avoidable, the SEC has an affirmative defense under § 550(b)(1), which would not allow the avoidance of the subsequent transfer. (Dckt. 103 at 6). The affirmative defense is contingent upon sufficient proof to show that the transferee takes (1) for value, including satisfaction or securing of a present or antecedent debt; (2) in good faith; and (3) without knowledge of the voidability of the transfer avoided. (*Id.*) The SEC argues that it received the transfer in good faith and without knowledge of the transfer's voidability for the value of satisfying LeGrand's final judgment. (*Id.*) It further asserts it need not have given MCP value inasmuch as a value determination is based upon what the transferee gave up, not what the transferor received. (*Id.*).

Here, the SEC asserts it gave value by considering LeGrand's debt paid. (*Id.* at 8-11). In addition, the SEC argues that it acted in good faith as it accepted the transfer in accordance with normal business practices. (*Id.* at 12). The SEC further states that it had no reason to know that MCP was involved as the cashier's check and enclosed letter did not make any reference to MCP. (*Id.* at 12-13). Inasmuch as there was no indication of MCP's involvement, the SEC argues that it had no actual knowledge of the voidability of the transfer. Without knowledge of the fraudulent transfer, the SEC believes it had no duty to investigate the matter further. In sum, the SEC argues that it qualifies for the affirmative defense. (*Id.* at 13-14).

The Trustee disagrees, asserting the SEC did not act in good faith and should have further investigated the transfer. The Trustee argues that the SEC acted in bad faith based on three reasons. First, the SEC had actual knowledge that LeGrand wanted to receive a reimbursement from MCP inasmuch as LeGrand attempted to add this revision to his Consent. Second, the SEC had knowledge of LeGrand's history of fraud, as evidenced by its investigation against him. Third, the SEC had actual knowledge that the cashier's check came from NORS, not LeGrand, despite the requirement that LeGrand not be reimbursed or indemnified by any source. (Dckt. 114 at 2-4).

6

**B. Cross-Motions for Summary Judgment by Trustee and Sprague**

On July 18, 2016, the Trustee moved for summary judgment against Sprague [Dckt. 100]. The Trustee argues that MCP's payments to Sprague for its representation of LeGrand and MCP are constructively fraudulent and avoidable. (Dckt. 101 at 12). The Trustee offers two arguments to avoid the transfers based on West Virginia's Uniform Fraudulent Transfer Act. (Dckt. 101 at 13-14). Under § 40-1A-4(a) of the West Virginia Code, a transfer is fraudulent if: (1) the creditor's claim arose before or after the transfer was made; (2) the debtor made the transfer without receiving a reasonably equivalent value in exchange; and (3) the debtor believed or reasonably should have believed that he would incur debts that he could not pay when they became due. In addition, the Trustee contends that the transfers are avoidable under § 40-1A-5 of the West Virginia Code. Under § 40-1A-5, a transfer is fraudulent if: (1) the creditor's claim arose before the transfer was made; (2) the debtor did not receive a reasonably equivalent value in exchange for the transfer; and (3) the debtor was insolvent when the transfer occurred or became insolvent as a result of the transfer. (*Id.*)

Here, the Trustee alleges that the investors' claims arose on November 21, 2007, the date stated in the promissory note. In sum, the investors' claims arose before the transfers to Sprague in 2008. He further alleges that MCP did not receive a reasonably equivalent value for the transfer inasmuch as some of the legal services provided were for LeGrand individually. In addition, the Trustee alleges that MCP knew or should have known that it could not pay its debts inasmuch as MCP had not paid the investors their claims when they were due. Inasmuch as MCP was not able to pay its debt, the Trustee asserts that MCP is insolvent. (Dckt. 101 at 14-15). Under § 40-1A-2 of the West Virginia Code, insolvency occurs when a debtor's debts are greater than the debtor's assets or when a debtor is not paying his debts when they are due. (Dckt. 101 at 15).

Sprague responds that MCP did receive a reasonably equivalent value for the transfer and that MCP was solvent at the time of the transfer. (Dckt. 108 at 8). Sprague asserts that it represented MCP and its agents during the SEC investigation. (*Id*. at 5). The Trustee counters this argument by classifying LeGrand and MCP as co-obligors, which are subject to the equitable principle of contribution. (Dckt. 101 at 15). Inasmuch as Sprague represented both MCP and LeGrand, the Trustee argues that LeGrand and MCP were jointly liable for Sprague's fee. Based on contribution, LeGrand and MCP were each responsible for one-half of those fees. *(Id.* at 16). Sprague asserts that the services it provided benefited MCP as MCP and its agents were under investigation. (Dckt. 115 at 10). Further, Sprague asserts that none of the fees were for LeGrand's personal legal bills. (*Id*. at 11). In addition, Sprague argues that the contribution doctrine does not create a claim against Sprague but in essence creates a claim against LeGrand, who is the co-obligor. (*Id*.)

Moreover, Sprague argues that MCP was solvent at the time the payments were made in 2008. (*Id*. at 12) In support of this argument, Sprague looks to when this Court found that MCP was insolvent. Based on all of the available financial records, the Court found MCP insolvent in 2011. Sprague contends that this finding constitutes the law of the case and, as such, 2011 should be considered the date of insolvency for all purposes in this case. (Dckt. 115 at 12). In addition, Sprague offers evidence to directly contradict the Trustee's determination that MCP was insolvent on November 21, 2007. Sprague argues that on November 21, 2007, the investors had the option of converting their loans to ownership in MCP. Sprague further alleges that if the investor wanted to collect repayment of the loan, the investor was required to demand that repayment. Inasmuch as no demand had been made, MCP was not past due on its payments to investors. Further, MCP investors did not bring this involuntary bankruptcy until June 25, 2012, which was several years after MCP paid Sprague. (*Id*. at 13) As further evidence, Sprague points to MCP's balance sheets

from 2008 to prove solvency, which reflected MCP's assets at the time to be over $12 million and its total liabilities to be around $6.8 million. (*Id*. at 14).

## II.

Federal Rule of Civil Procedure 56, made applicable to these proceedings by Federal Rule of Bankruptcy Procedure 7056, authorizes summary judgment only if "there is no genuine issue as to any material fact and . . . the moving party is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(c), Fed. R. Bankr. P. 7056. Summary judgment is proper where "the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). The burden is on the nonmoving party to show that there is a genuine issue of material fact for trial. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). The nonmoving party must do so by offering "sufficient proof in the form of admissible evidence" rather than relying solely on the allegations of her pleadings. *Mitchell v. Data General Corp.*, 12 F.3d 1310, 1316 (4th Cir. 1993).

The Court must "view the evidence in the light most favorable to the [nonmoving] party." *Tolan v. Cotton*, ––– U.S. –––, 134 S. Ct. 1861, 1866, 188 L.Ed.2d 895 (2014) (internal quotation omitted). "The court ... cannot weigh the evidence or make credibility determinations." *Jacobs v. N.C. Admin. Office of the Courts*, 780 F.3d 562, 568–69 (4th Cir. 2015). In general, if "an issue as to a material fact cannot be resolved without observation of the demeanor of witnesses in order to evaluate their credibility, summary judgment is not appropriate." Fed. R. Civ. P. 56 advisory committee's note to 1963 amendment.

After viewing the facts in the light most favorable to the defendants, the SEC and Sprague, and drawing all reasonable inferences in their favor to the extent of their respective statuses as nonmovants, the Court concludes that there are genuine issues of material fact. Among others, the Court must determine if MCP was insolvent at the time the transfers were made; if LeGrand had actual intent to hinder, delay, or defraud MCP's creditors; if the shares sold to MCP were worthless; and if MCP benefited from the transfers.

It is, accordingly, **ORDERED** that the cross-motions for summary judgment [Dckts. 97, 100, 102, & 107] be, and hereby are, **DENIED**.  It is further **ORDERED** that this case shall proceed as follows:

| *Case Event* | *Date* |
|---|---|
| Settlement meeting | 04/14/2017 |
| Proposed pretrial order submitted to Defendants | 05/05/2017 |
| Integrated pretrial order filed with the Court | 05/12/2017 |
| Pretrial conference | 05/30/2017 11:00 am |
| Proposed findings of fact/conclusions of law | 06/12/2017 |
| Final settlement conference | 06/19/2017 11:00 am |
| Trial | 06/20/2017 09:30 am |

Regarding the settlement meeting, the parties and their lead trial counsel, if any, shall meet and conduct negotiations looking toward the settlement of the action, and counsel and any unrepresented parties will be prepared at the pretrial conference to certify that they have done so. Counsel for the plaintiff(s) shall take the initiative in scheduling the settlement meeting, and all other counsel and unrepresented parties shall cooperate to effect such negotiations.  If the action is not settled during the settlement meeting or mediation session, and if there is no order or

stipulation to the contrary, counsel and unrepresented parties shall make all Rule 26(a)(3) disclosures at the conclusion of the meeting or session.

The proposed integrated pretrial order, signed by all counsel and unrepresented parties, shall set forth the matters listed in District Court Local Rule of Civil Procedure 16.7(b).

At both the pretrial and final settlement conferences, lead trial counsel shall appear fully prepared to discuss all aspects of the case. Individuals with full authority to settle the case for each party shall be present in person or immediately available by telephone.

Should lead trial counsel fail to appear at any pre-trial conference or otherwise fail to meet and confer in good faith with opposing counsel as required herein, or should a party or his authorized representative fail to appear or be available at any conference or otherwise fail to meet and confer in good faith as required herein, appropriate sanctions may be imposed, including, but not limited to, sanctions by way of imposition of attorney fees against the attorney and/or his client pursuant to Fed. R. Civ. P. 16(f).

All proceedings shall be held by the court at the Robert C. Byrd United States Courthouse, Charleston, West Virginia.

The Clerk shall transmit a copy of this written opinion and order to all counsel and parties entitled to notice.